WARREN *v.* CITY ELECTRIC RAILWAY CO.

1. ELECTRICITY—INJURIES—INSPECTION—REASONABLENESS.

   The reasonableness of the inspection of live electric wires is a question for the jury, depending as it does upon the condition of the line, and the nature of the danger to be feared.

2. EVIDENCE—JUDICIAL NOTICE—DANGEROUS QUALITIES OF ELECTRICITY.

   The court will take judicial notice of the fact that electricity is dangerous and so generally recognized.

3. ELECTRICITY—CARE REQUIRED—INSTRUCTIONS—PREJUDICE.

   In an action for injuries caused by a live electric wire, an instruction requiring of defendant the exercise of such care as ordinarily careful and prudent persons would exercise in dealing with electricity under similar circumstances was sufficiently favorable to it.[1]

4. SAME—TIME FOR REPAIRS—QUESTION FOR JURY.

   Plaintiff was injured by coming in contact with a telephone wire, charged with a dangerous current, which it received from a trolley span wire belonging to defendant, through being pressed down upon the span wire by the limb of a tree, which was broken by a storm the previous evening at a considerable distance from the point where the wire parted and fell and where plaintiff was injured. There was evidence that the span wires were not properly insulated and were not protected from contact with other wires *Held,* that whether defendant was guilty of negligence in these respects was for the jury, notwithstanding the short time that elapsed between the breaking of the wire and the accident in which to discover and make repairs.

5. SAME—PROXIMATE CAUSE.

   Where plaintiff was injured by coming in contact with a telephone wire, charged with a dangerous current from being pressed down upon an improperly insulated trolley span wire by the limb of a tree, which was broken by a severe storm

[1]As to liability for injuries by electric wires in highway, see note to *Denver Consolidated Electric Co.* v. *Simpson* (Colo.), 31 L. R. A. 566.

the previous evening, the failure to guard the span wire and the want of insulation were concurring causes establishing a liability, and the breaking of the tree was not the proximate cause of the injury.

6. EVIDENCE—EXPERT TESTIMONY—COMPETENCY OF WITNESS.

In an action for injuries caused by a live electric wire, witnesses who were experienced in the use of certain alleged defective insulators used were entitled to testify as to their experience in their use, and to give their opinion as to their effectiveness, as well as their tendency to fall into disuse in places where formerly used.

7. SAME—DEMONSTRATIVE EVIDENCE.

In an action for injuries caused by a live electric wire, it was proper to introduce in evidence an insulator or hanger which was alleged to be defective and insufficient.

8. SAME—APPEAL—REVIEW—HARMLESS ERROR.

In an action for injuries by a live electric wire, defendant was not prejudiced by a question, asked of its foreman on cross-examination, as to whether it was not common knowledge among defendant's employés that defendant's span wires were charged, where it did not appear that the witness admitted such fact.

9. ELECTRICITY—PERSONAL INJURIES—ACTIONS—EVIDENCE.

In an action for injuries by a live electric wire, which had become hot by contact with defendant's trolley span wire, it was proper to ask defendant's foreman, on cross-examination, whether he had not warned linemen against hot span wires.

Error to St. Clair; Tappan, J. Submitted June 21, 1905. (Docket No. 43.) Decided September 19, 1905.

Case by Wells Warren, by next friend, against the City Electric Railway Company and the Michigan Telephone Company for personal injuries. There was judgment for plaintiff against the defendant railway company, and it brings error. Affirmed.

*Phillips & Jenks*, for appellant.

*S. A. Graham* and *George G. Moore*, for appellee.

HOOKER, J. The plaintiff, a lad of 11 years of age, was

seriously injured by coming in contact with a live telephone wire, which lay upon the ground in a public street in Port Huron. The proof shows that the telephone wire received its dangerous current from a trolley span wire belonging to appellant, through its being pressed down upon said span wire by the limb of a tree, which was broken by a severe storm the previous evening, at a considerable distance from the point where the wire parted and fell, which was the place where the boy was injured. Action was brought against the telephone company and the appellant, and a verdict and judgment of $9,000 was returned against the latter; a verdict being directed in favor of the telephone company. The acts of negligence charged against appellant were as follows:

1. Failure to properly insulate the span wires of the trolley line.
2. To properly and at reasonable time inspect said insulation.
3. To place guard wires over the span wires, to prevent contact with other wires.
4. To remove such other wires as should come in contact with the span wires.

There was proof tending to show that the insulators used were ineffective, and that they were not reasonably safe and fit for the purpose. There was also testimony as to the nature and frequency of inspections.

These questions were for the jury, unless it can be said that the proof as to the former was improperly admitted and that the inspection was conclusively shown to be reasonable. Whatever may be said of the former, we cannot' say as matter of law that the inspection proved was reasonable and proper. That is a question for the jury, depending as it does upon the condition of the line and the nature of the danger to be feared. The frequency and care required in inspections depend much upon the character of the apparatus, or machinery, or other agent from which danger is to be feared, and as its destructiveness and danger is increased the duty of care increases.

In other words, the degree of hazard attending the use of a dangerous article has a direct relation to the care which is requisite in its use.   Electricity is to be classed with gunpowder, dynamite, and other treacherous and destructive agents, of whose dangerous qualities we may take judicial notice, as well as of the fact that society recognizes them, and acts accordingly.   No prudent man handles these things with a low degree of caution.   We find it unnecessary to say, as some courts have said, that the use of electricity imposes the duty of the greatest possible care.   The circuit judge did not so charge, but contented himself with saying that the duty requisite was such as ordinarily careful and prudent persons would exercise in dealing with electricity under similar circumstances.   This was sufficiently favorable to the defendant, although it involved the idea, before expressed, that the nature of the hazard is an element in determining the question.   The frequency and nature of the inspections required depend in a measure upon this.   The following authorities, suggested by plaintiff's brief, show the trend of decisions upon this subject: *Friesenhan* v. *Telephone Co.*, 134 Mich. 292; *Wolpers* v. *Power Co.*, 91 App. Div. (N. Y.) 424; *Fitzgerald* v. *Illuminating Co.*, 200 Pa. 540; *Paine* v. *Power Co.*, 64 App. Div. (N. Y.) 477; *Denver Consolidated Electric Co.* v. *Lawrence*, 31 Colo. 301; *Economy Light & Power Co.* v. *Hiller*, 203 Ill. 518; *Memphis St. R. Co.* v. *Kartright*, 110 Tenn. 277; *Lexington R. Co.* v. *Fain's Adm'r*, 24 Ky. Law Rep. 1443; *Lutolf* v. *Light Co.*, 184 Mass. 53; *Richmond, etc., R. Co.* v. *Rubin*, 102 Va. 809; Keasbey on Electric Wires, §§ 242, 269; 3 Curr. Law, pp. 1182, 1185; 1 Curr. Law, p. 996; *City Electric St. R. Co.* v. *Conery*, 61 Ark. 381 (31 L. R. A. 570); 5 Curr. Law, p. 1088.

Counsel contend that the evidence shows that a reasonable time for appellant to discover the danger and make repairs had not elapsed, and that the jury should have been so instructed.   Were it conclusively shown that de-

fendant's line was in such perfect condition that the live wire was only chargeable to the effect of an extraordinary storm, this point would merit more consideration. But there was a claim of negligence in not properly insulating the span wire and in not protecting it from contact with other wires, both of which questions were for the jury.

In this connection it is urged that the proximate cause of the injury was not the want of insulation, nor the failure to guard the span wire, but it was the breaking of the tree. It is generally the case that an accident is the result of concurring causes. If the rain and snow never fell and the wind never blew, wires would be less likely to fall and break. In this case the span wire was hot where it was not intended to be. The telephone wire was pressed upon it when it was not so intended. The wire burned in two from the intense heat taken on from the span wire, and the ends fell. All of these were things to be anticipated and guarded against. If this was not done to the extent that a prudent man would do it, there was a failure of duty, which might be a concurring cause of the accident, making defendant liable. Thus we held that, where a horse was caused to struggle and injure his master through getting his foot through a hole in a bridge, the defect in the bridge was a proximate cause of the accident.[1]

One Wager was allowed to testify to efficiency of the insulators used to prevent hot span wires. He was not permitted to testify that they were unfit, but gave his experience in their use. He said he came in contact with many hot span wires during the five years that he worked where such insulators were used on Lapeer avenue in Port Huron. Harry Hoffman, shown, we think, to be experienced and an expert, gave his experience and also his opinion as to the effectiveness of this kind of insulators, as well as their tendency to fall into disuse in places where formerly used. We think that both of these witnesses were competent to give opinions upon the effective-

[1] *Smith* v. *Township of Sherwood*, 62 Mich. 159.—REPORTER.

ness of these insulators; also, that it was proper to introduce the insulator or hanger in evidence.

Walker, a foreman of defendant, was asked on cross-examination if it was not common knowledge and common talk among the defendant's employés that the span wires were charged. If this was not proper on cross-examination, the answer did not injure defendant; for our attention is not called to an admission that it was so. It was not improper to show on cross-examination that he may have warned linemen against hot span wires.

It is claimed that the damages were excessive. On motion for a new trial they were reduced to $6,000, in which plaintiff acquiesced. The injury was serious, and we think the judgment should not be reversed on this ground.

Complaint is made of the intemperate discussion of the case, but we are not satisfied that defendant was injured by what was said. We think it unnecessary to discuss other questions.

We have found no error, and the judgment is affirmed.

McALVAY, BLAIR, MONTGOMERY, and OSTRANDER, JJ., concurred.